## GOSA v. SOUTHERN RY.

1. NEGLIGENCE—DAMAGES—WILFULNESS—MENTAL ANGUISH—INFANT.
   —Allegation and proof of injury to infant are competent in an action
   by mother for mental anguish caused by wilful negligence of de-
   fendant.
   MR. JUSTICE WOODS *dissents.*
2. EVIDENCE—RES GESTAE.—EXCLAMATIONS of bodily pain after an acci-
   dent are admissible to show existence and locality of pain as part
   of *res gestae.*
3. IBID.—EXPERT.—A non-expert witness may give his opinion as to
   whether he would or not have heard the statutory signals of a loco-
   motive and it is not expert evidence.
4. IBID.—RES GESTAE—CONTRADICTION—AGENT.—DECLARATIONS of
   a bystander, whether an agent of party or not, after an accident are
   not part of *res gestae,* and cannot be contradicted.
5. RAILROADS—CROSSINGS.—CHARGE as to corresponding duty of
   railroad and traveler at a public crossing, when considered as a
   whole, held to be free from error.
6. REHEARING refused.

Before GARY, J., Spartanburg, March term, 1903. Af-
firmed.

Action by Fleeta Gosa against Southern Railway Co.
From judgment for plaintiff, defendant appeals.

*Mr. C. P. Sanders,* for appellant, cites: *As to mental
anguish of mother from sufferings of child:* Bus. on Per.
Inj., secs. 8 and 9; 8 Ency., 664; 2 Kent Com., 195; 17
Wall., 553; 2 ed. Cool. on Torts, 269; 77 Am. Dec., 72;
Wat. on Dam. for Per. Inj., 512. *Error to exclude declara-
tions of bystander after accident:* 34 P. R., 856; 78 Pa. St.,
493; 43 Ark., 99; Gillett on Ind. and Coll. Ev., secs. 252,
253, 256; 9 Am. St. R., 891; 27 Am. St. R., 69, 904, 930;
1 Green. Ev., 109. *Incompetent to admit declarations of
party as to health when party testifies:* 61 Minn., 31; 105 N.
Y., 294; 130 N. Y., 654; 93 Ga., 462; 37 L. R. A., 203; 59
Am. R., 508; 144 Mass., 244; 8 Wheat., 326. *Charging*

*what facts would make defendant, per se, liable, is on facts:*
53 S. C., 452; 54 S. C., 299, 505; 61 S. C., 185; 30 S. C.,
228; 51 S. C., 453.  *To charge it was duty of railroad to
give signals when in hearing distance of crossing, was error:*
36 S. C., 487; 2 Ency., 1 ed., 249; 38 S. E., 730; 40 S. E.,
37; 2 Ency. P. & P., 145.  *As to powers of Judge to grant
new trial:* 19 S. C., 581; 15 S. C., 392.

*Messrs. Evans & Finley,* contra, cite: *Injuries to child are
a part of whole accident:* 52 S. C., 336; 60 S. C., 9; 39 S. C.,
162; 53 S. C., 253.  *Exclamations of bodily pain after acci-
dent are part of res gestae:* 32 N. Y., 597; 48 Wis., 513; 27
Kan., 463.  *Report of board of directors as to finances of
defendant admissible in action for punitive damages:* 16 S.
C., 439; 9 Rich., 426.  *Declaration of bystander after acci-
dent is not part of res gestae:* 60 S. C., 71; *and he could not
be contradicted:* 58 S. C., 82; 43 S. C., 210.  *As to opinion
by non-expert witness:* 38 S. C., 199.

The opinion herein was filed July 28th, 1903, but remitti-
tur held up on petition for rehearing until

November 2, 1903.  The opinion of the Court was deliv-
ered by

MR. JUSTICE GARY.  *Statement of Facts.*—This is an
action for damages on account of injuries received by the
plaintiff in a collision with an engine of defendant at a high-
way crossing.  The material allegations of the complaint are
as follows:

"II.  That on the 20th day of October, A. D. 1900, plain-
tiff, with her infant daughter, nine weeks old, was traveling
on the public highway in said county and State, in a wagon
drawn by a mule, and that at or near Mt. Zion Church, in
said county, the highway upon which plaintiff was traveling
is crossed by defendant's railroad, and that while plaintiff
was attempting to cross said railroad at said point upon the
public highway, as she had a right to do, the defendant,

without any notice whatever to plaintiff, caused its locomo-
tive and tender on said tracks to approach said crossing at a
reckless and unlawful high rate of speed, and before plaintiff
could escape (with her infant baby), said locomotive struck
the wagon in which plaintiff was seated, wrecking the same
and throwing plaintiff (with her infant in her arms) to the
ground in so violent a manner as to (break the thigh bone
of her said infant) and horribly bruising the plaintiff,
wounding her physically and mentally, to her great damage
in the sum of five thousand dollars.

"III. That said defendant company failed to sound the
whistle or ring the bell upon its said locomotive before reach-
ing said crossing, as required by the statutes in such cases
made and provided, and wilfully and wantonly and negli-
gently, and in utter disregard of the rights of plaintiff, caused
its locomotive to run into the wagon in which plaintiff (and
her infant) were traveling upon the public highway afore-
said, thereby inflicting upon her (and her said infant) serious
bodily injuries and mental suffering, to her great damage
five thousand dollars.

"IV. That said defendant company carelessly, negligently,
wantonly and wilfuly, and in utter disregard of the rights
of plaintiff (and her infant in arms), failed to stop its said
locomotive, after discovering the wagon in which plaintiff
was traveling upon the public highway in time to prevent the
injury to plaintiff (and her infant), to her great damage in
the sum of five thousand dollars."

The answer of the defendant denied generally the allega-
tions of the complaint, and set up the defense of contributory
negligence.

When the case was called for trial, the defendant duly
moved to strike from the complaint, as being irrelevant and
redundant, and as not constituting the cause of action against
the defendant, the following words from paragraph two:
"break the thigh bone of her said infant;" and from para-
graph three the words in line two from the bottom of said
paragraph, "her said infant;" and from paragraph four the

words, "and her infant in arms;" and in second line from the bottom of paragraph four the words, "and her infant."

The Court overruled defendant's motion to strike out the foregoing words from the complaint, holding that they were responsive to the issue of mental anguish and suffering. The jury rendered a verdict in favor of the plaintiff.

The following are the appellant's exceptions:

"1. In refusing to strike from the complaint the following words: 'break the thigh bone of her said infant;' and also, 'and her said infant;' and also, 'and her infant in arms;' and also, 'and her infant,' as being redundant and irrelevant, and not constituting a cause of action in favor of plaintiff against the defendant. And in ruling and holding that these words were responsive to the allegation of mental suffering, thereby holding: (a) That one person can recover damages for mental suffering caused by injuries inflicted upon another. (b) That these words were relevant, and were sufficient to constitute a cause of action in favor of plaintiff against the defendant in this action.

"2. In allowing the following questions to be asked the plaintiff, and in allowing her to answer the same, against the objection of the defendant, to wit: 'Q. Where was the baby when the accident happened? A. In my arms. Q. Who is dependent upon you for support? A. My baby. Q. Were you able to minister to the wants of your infant at that time? A. I was not. Q. What was the condition of your mind by reason of that fact; was it agitated? A. A great deal. Q. I believe you stated that your infant had its thigh broken? A. Yes, sir. Q. By reason of that fact, state whether you suffered mental excitement or not? State your circumstances. What worried you? A. I can't state how I felt. It was an awful thing to think of my being on the railroad track and the engine coming. I don't see how I could have been saved, and I think of my infant and myself both being crushed by the engine. I can imagine myself mashed up on the track.'

"3. Because his Honor, in refusing to strike out the words

referred to in first exception from the complaint, and in permitting the plaintiff to testify as to injuries inflicted upon her baby and the effect this had upon her mind, erred in that he allowed the jury to consider and to assess damages for the mental suffering of the plaintiff on account of injuries caused another.

"4. In allowing the witness, Charles Cannon, against the objection of the defendant, to testify that he heard the plaintiff, some time after the accident, complain, it being respectfully submitted that the complaints of the plaintiff made after the accident were not part of the *res gestae,* and, besides, was permitting the *ex parte* statements of the plaintiff to go to the jury and to be considered by them. ·

"5. In allowing the witness, Fred Solesby, to give his opinion as to whether he would or would not have heard the bell ring or the whistle blow."

6. (Withdrawn.)

7. (Withdrawn.)

"8. In not permitting the witness, T. D. Haynes, to testify to a conversation with W. L. Stone, who was driving the wagon, had immediately after the accident, and in not ruling and holding that any statement made by W. L. Stone at that time was competent as being a part of the *res gestae,* being made in the presence of the plaintiff. In not permitting the witness, T. D. Haynes, to testify to a conversation had between J. C. Stone, who had been previously examined as a witness for plaintiff, and the conductor, Mr. Giles. And in ruling and holding that such conversation would not be relevant or material. The error being, that as J. C. Stone had denied on his examination making statements to the conductor, Mr. Giles, on material matters, the foundation having been properly laid, it was competent for defendant to contradict this witness. In not permitting the following questions to be asked the witness, T. D. Haynes, and in not allowing the said witness to answer the same: 'Q. You remember the fact that Mr. Giles had a conversation with the young man? Q. On that occasion, did you hear Mr. Giles ask Mr.

J. C. Stone if he heard the whistle blow?' It being respect-
fully submitted that any statement or conversation made by
parties immediately after the accident and in the presence
of the plaintiff were a part of the *res gestae,* and if not, still
it was error to refuse to allow the witness, J. C. Stone, to
be contradicted after the foundation had been properly laid.

"9. In not permitting the witness, W. M. Giles, to testify
to the conversation had immediately after the accident with
Mr. W. L. Stone, in the presence of the plaintiff, it being
respectfully submitted that such statement was a part of
the *res gestae.*

"10. After the following question had been asked the wit-
ness, W. M. Giles, with reference to J. C. Stone: 'Did you
have a conversation with him?' and after he had answered it,
in refusing to allow the following question to be asked this
witness: 'Q. In that conversation, did you ask him if he
heard the whistle blow?' It being respectfully submitted
that the conversation between the witness and J. C. Stone,
had immediately after the accident in the presence of the
plaintiff, was a part of the *res gestae;* but if not, still the
defendant had a right to contradict the witness, J. C. Stone,
as to matters for which the foundation had been properly
laid, and it was error in refusing to allow him to do so.

"11. In not allowing the witness, Broad Williams, to be
asked these questions, and in refusing to allow him to answer
the same: 'Q. State whether or not it takes a woman of
health to run seven looms and manage them? Q. I will ask
you what kind of a woman as to strength does it take to run
seven looms?' It being respectfully submitted that such
questions were responsive to the testimony of plaintiff, tend-
ing to show that she was in ill health, weak and frail, and it
was error to refuse to allow the defendant to prove and
examine the witness as to these facts.

"12. In allowing the witness, Alma Dobbins, to be asked
the following questions, against the objection of defendant,
and in permitting her to answer the same: 'Q. When girls do
not do their work, they are pretty apt to be discharged, are

they not?   Q.  Now, if a girl does not do her work, is continually complaining and getting out, is it not likely she would be discharged?'   And in ruling that such questions were in reply.   It being respectfully submitted that the testimony was not in reply to any testimony brought out by defendant, and in addition that this testimony was irrelevant to any of the issues raised in this case.

"13.  In allowing the following questions to be asked J. C. Stone, and in permitting him to answer the same, over objections of defendant: 'Would you have gone on that track had you seen the engine approaching, knowing that Miss Gosa and her baby were in there, dependent upon you for safety?   A. I would not.'   The error being in permitting the witness at this time to say what he would or would not have done at the time of the accident, and thus giving his opinion, and allowing him to testify as to a fact, which was a question for the jury and not for the witness.

"14.  In charging in connection with defendant's sixth request, the following: 'If he fails to use those senses in gross negligence, then under those circumstances he cannot recover.'   The error being, as it is respectfully submitted, that the addition of these words were calculated to lead the jury to believe that even though a man saw and heard an approaching train in ample time to keep from going on the track, yet if notwithstanding this he did enter on the track and was injured, he could recover, unless he was guilty of gross negligence, even though it might appear that he had failed to exercise such care and caution as persons of ordinary prudence should exercise under such circumstances.

"15.  That the sixth request, embodying, as it does, a sound proposition of law, requiring a person to use such care and caution as men of ordinary care and prudence would under the supposed circumstances use, it was error to instruct the jury substantially that such person could recover unless he was guilty of gross negligence; it being respectfully submitted that if one's attention is called to the approach of the train by reason of the whistle being blown or the bell being

23—67

rung, as required by the statute, then that such person cannot recover damages for an injury caused by collision at the crossing, if he has been guilty of a want of ordinary care and prudence.

"16. Because, in connection with defendant's seventh request, which his Honor recognized as sound law, the illustration used by his·Honor might well have led the jury to believe that a person injured under the circumstances could recover, unless he stopped his ears and deadened his senses. Whereas, it is respctfully submitted, that a man can be guilty of gross negligence in entering upon a railroad track without stopping his ears or deadening his senses, or doing any other wilful act.

"17. (a) Because, in charging as his Honor did in connection with defendant's seventh request, the jury might well have concluded that it took a wilful act to constitute gross negligence.    (b) Because, under his Honor's illustration, the jury might well conclude, that one injured on a crossing could recover, if there was a failure to ring a bell or sound a whistle, as required by statute, unless he did an act to keep from seeing or hearing the train.

"18. Because his. Honor erred, after recognizing the eighth request of the defendant as containing a sound proposition of law, to instruct the jury in connection therewith as follows : 'The law would not permit him to deaden his senses by stopping his ears and go heedlessly on the track;' the error being, as it is respectfully submitted, that this charge might well have led the jury to believe that a person could only be guilty of gross negligence by doing a deliberate or intentional act; whereas, the statute *in its terms makes gross negligence different from wilful negligence.*

"19. In refusing to charge defendant's tenth request, to wit : 'If one sees or hears an approaching train in ample time, by the exercise of ordinary care, to keep from going on the railway track just in front of such train, it is his duty to stop before entering upon such track just in front of the engine; and if he, knowing of its approach and of the

dangers attendant upon his act, does go on the track, and by reason of this is struck and injured, and the jury believe that in going on such track he failed to exercise ordinary care, and this failure contributed as a proximate cause to his injury, then he cannot recover damages of the railroad on account thereof;' the error being, as it is respectfully submitted: (a) That if a person's attention is called to the approach of the train by the ringing of the bell or the blowing of the whistle, as required by the statute, then, under the terms of the statute, if he is guilty of the want of ordinary care and prudence, and if this contributes as a proximate cause to his injury, he cannot recover. (b) Because if one sees or hears a train in ample time to keep from entering on the track, and if he, knowing the danger, does enter on the track, then the failure to ring the bell or blow the whistle cannot be said to have contributed to his injury.

"20. Because, after having read the statute to the jury, his Honor charged that 'if the company failed to ring the bell or sound the whistle, as required by the statute, that then, *per se,* they would be liable for consequences of such damage as accrued.' The error being, as it is respectfully submitted: (a) That this was a charge upon the facts, in violation of section 26, article V., of the Constitution. (b) That this charge did not take into consideration the terms of the statute, which required that it must be made to appear not only that the company failed to give the signals, but that this failure contributed to the injury, whereby the jury might well have concluded that upon the mere failure alone to give the signals required, the company would be liable, even though it might not appear that this failure contributed to the injury. (c) That by this charge the jury might well have concluded that if the signals were not given, as required by the statute, yet that the company would be liable for any damages caused by the collision with a person at the crossing, even though such person may have been guilty of gross or wilful negligence, or was doing an unlawful act. (d) That by this charge his Honor failed to state the law fully to the

jury, thereby taking from their consideration the following questions: (1) Whether the failure to give the signal contributed to the injury.    (2) Whether plaintiff was guilty of gross or wilful negligence, or was doing an unlawful act.

"21.  Because his Honor charged the jury that the failure on the part of a railroad company to ring the bell or blow the whistle, as required by the statute, would mean that it was guilty of gross or wilful negligence; the error being that by this charge his Honor added to the burdens imposed upon the railroad by the terms of the statute, and in addition charged the jury what facts would constitute gross or wilful negligence; thereby charging upon the facts, contrary to section 26, article V., of the Constitution.

"22.  Because his Honor erred in charging as follows: 'But it would not excuse the railroad company for you to find plaintiff was simply guilty of ordinary negligence.   If you find that they could have seen the train by using ordinary care, and did not use ordinary care, and that was a negligent act itself, but not gross negligence, that would not excuse the railroad company, but in order to excuse them, the negligence must have been wilful or gross.   Now, what would be gross negligence?   It so happens that in this State a case was tried, I alluded to it this morning, where one of our ablest Judges, in considering this statute, said: "A person might safely enter upon a railroad track and go to sleep, and wait to be aroused by the blowing of the whistle and ringing of the bell."   The Supreme Court said no, that would be gross negligence.   Now, the sections which I have just read to you, then, would excuse the company for an act of that sort.   If a party would go and wilfully stand upon the track, even if the company failed to ring its bell, if he says I will stand here until he does blow his whistle and rings his bell, that would be wilful, and the railroad company cannot be held liable under these circumstances.'   The error being, as it is respectfully submitted: (a) That his Honor did not distinguish between gross and wilful negligence, but by this charge and illustration fixed a standard for gross negligence

different from that fixed by the terms of the statute. (b)
That this charge and illustration might well have led the jury
to believe that a person would not be guilty of gross negli-
gence unless he was guilty of a wilful act. (c) That this
charge might well have led the jury to conclude that a person
could not be guilty of gross negligence in entering upon a ·.
railroad track at a crossing, unless he did so wilfully and in-
tentionally. (d) Because his Honor, in analyzing this statute
and in illustrating the same to the jury, overlooked the terms
of the statute which would excuse a railroad company if a
person injured was guilty of gross negligence.

"23. Because his Honor erred in charging: 'If you find
that defendant company did fail to blow its whistle, engineer
or fireman failed to blow the whistle or ring the bell continu-
ously for five hundred yards before approaching that cross-
ing, and that failure contributed to the collision that has been
described here, then, why you would estimate and say as to
the amount plaintiff sustained in damage, if she has been
damaged. How do you estimate damages? The law says,
if the injury has been occasioned by the negligence of the
defendant company, you can take into consideration not only
the loss of time that the party has suffered, or injury to his
property, but you can take into consideration his feelings, or
any pain or suffering that has been the result of the injury
received under those circumstances, etc. ;' the error being,
as it is respectfully submitted: (a) That by this charge the
jury might well have concluded that if the railroad company
failed to ring its bell or sound its whistle for five hundred
yards, as required by the statute, and that this failure con-
tributed to the collision, that plaintiff was bound to recover
damages, even though she might be guilty of gross or wilful
negligence, or was doing an unlawful act. (b) That by this
charge his Honor took from the consideration of the jury
the question of gross or wilful negligence, or the doing of an
unlawful act on the part of the plaintiff.

"24. Because his Honor, in reference to the corresponding
rights and duties of the railroad company and a traveler at a

railroad crossing, erred in charging as follows : 'It is the duty of a passenger to use such care and prudence in approaching a railroad track as a man of ordinary prudence and caution under the circumstances would use. On the contrary, it is the duty of the railroad, when it comes within hearing distance from the crossing, to sound the alarm and sound it continuously until it passes that place. The error being, as it is respectfully submitted : (a) That this was a charge on the facts, contrary to section 26, article V., of the Constitution. (b) Because it fixed a different rule or standard of care for the railroad company to observe in reference to ringing its bell or blowing its whistle than that fixed by the statute.

"25. Because his Honor erred in refusing the motion of the defendant for a new trial, and in holding that the amount of damages was a matter entirely for the jury; whereas, it is submitted that a Circuit Judge still has the right to grant a new trial for excessive damages, and still has the power to reverse and set aside verdicts of juries."

*Opinion.*—We will consider the exceptions in regular order :

*First exception:* The complaint alleges damages arising not only from negligence, but from intentional wrong on the part of defendant. When the action is for punitive damages, the jury has the right to take into consideration all the surrounding circumstances attending the injury in awarding exemplary damages. *Pickens* v. *R. R.,* 54 S. C., 498, 32 S. E. R., 567; *Marsh* v. *Tel. Co.,* 65 S. C., 430; *Young* v. *Tel. Co.,* 65 S. C., 93. The allegations were, therefore, relevant for that purpose. Furthermore, the decisions in this State are to the effect that when the action is, for exemplary damages, the jury, independently of the statute, may take into consideration the mental anguish suffered by the plaintiff, on account of the defendant's intentional wrong. *Lewis* v. *Tel. Co.,* 57 S. C., 325, 35 S. E. R., 556; *Marsh* v. *Tel. Co.,* 65 S. C., 430.

*Second exception:* This exception does not properly raise any question for consideration, as it fails to specify in what

particular there was error.    But, waiving this objection, the authorities just cited, and the case of *Youngblood* v. *R. R. Co.,* 60 S. C., 15, 38 S. E. R., 232, show that it cannot be sustained.

*Third exception:* This exception is disposed of by what was said in considering the first exception.

*Fourth exception:* "Exclamations of bodily or mental pain, and contemporaneous statements as to where the pain is, are admissible in evidence of the existence and locality of the pain." 21 A. & E. Ency., 103. In *Cleveland &c. R. R. Co.* v. *Newell,* 104 Ind., 264, the rule is thus stated:

"Where it becomes important, to illustrate the physical or mental condition of an individual, either at the time an injury is received, or from thence to the time of inquiry as to its severity, effect and nature, we think expressions or declarations of present existing pain or malady, whether made at the time the injury is received or subsequent to it, are admissible in evidence (citing cases).    Expressions of present existing pain, and its locality, are exceptions to the general rule which exclude hearsay evidence.    They are admitted on the ground of necessity, as being the only means of determining whether pain or suffering is endured by another."    In the case of *McClintock* v. *Hunter,* Dud., 327, the Court says: "It is well settled, that what a patient has said of his own feelings, pains, &c., while afflicted with a disease, which is the subject of judicial decision, may be told by the witness and is competent evidence.    Such expressions are the indications or symptoms of the disease itself, and cannot be separated from it.    A dumb patient would writhe and point to the seat of his pain, while one, who spoke, would indicate the same in words.    In such cases the words or gestures are equally the signs of the disease felt by the patient.    They are both acts, or parts, in detail, of the disease which we seek to discover, and come within what is well understood by the *res gestae*—the thing in all the exhibitions."

*Fifth exception:* This question has so recently undergone judicial investigation in the case of *Easler* v. *R. R.,*

59 S. C., 311, 37 S. E. R., 938, that we deem it only necessary to cite that case to show that the exception cannot be sustained.

The sixth and seventh exceptions were abandoned at the hearing in this Court.

*Eighth exception:* The question presented by this exception arose as follows: "Q. The time you saw that wagon out there and blew your whistle, state whether or not they had time to stop their wagon before going on the crossing? A. Yes, sir; plenty of time. Q. How far beyond the crossing did you run on that day? A. I went to that little cut right south of the crossing. Q. Then what did you do? A. Backed, right straight back to the crossing and stopped. Q. How long were you going down there and coming back? A. A very short time. Q. What do you mean by a very short time? A. May be a minute or two, something like that. Just as quick as the engine stopped, I threw her right back and put the engine on back gear and started the engine back. Q. When you got back what did you find? A. I found the rear of the wagon torn up, trunk torn up and valise there, and I found Miss Gosa standing up. I asked her if she was hurt. Found the baby crying, and there were two men there, an old man and a young man. Q. You have any conversation with them? A. Yes, sir. Q. What was it? A. Miss Gosa asked if her baby was killed, and I told her no, that the baby was crying. Q. Did you have any conversation with these men in the presence of Miss Gosa—was she present? A. She was there in the crowd. She was not immediately with the men. Q. How far was she from them? A. As far as from here to the door, I suppose. Q. Did you have any conversation with W. L. Stone? Objection by the plaintiff, sustained by the Court, on the ground it is not part of the *res gestae,* and is immaterial. Q. Had they gathered themselves together before you got there? A. No, sir; they were all standing around there. Q. State whether or not anybody else had got there before you got there? A. No, sir, I don't think

so. Q. Did you have any conversation with the young man? No, sir, I do not think I said anything to him, much. Q. Did you hear Mr. Giles have any conversation with the young . man? Plaintiff objects and objection overruled. Q. You remember the fact that Mr. Giles had a conversation with the young man? A. Yes, sir. Plaintiff objects as irrelevant and incompetent, and objection is sustained, on the ground it is not material. Court. What he told the conductor would not be relevant. Q. On that occasion, did you hear Mr. Giles ask Mr. J. C. Stone if he heard the whistle blow? Plaintiff objects and objection sustained."

We will first consider whether this testimony was admissible on the ground that it was part of the *res gestae*. It is impossible to formulate an inflexible rule as to the length of the interval between the time of the injury and the declaration of the witness that will render the testimony inadmissible. The facts of each case stand alone and must speak for themselves, and the presiding Judge must determine whether they fall within or without the operation of the rule. "To make the declarations a part of the *res gestae* they must be contemporaneous with the main fact; but in order to be contemporaneous, they are not required to be precisely concurrent in time. If the declarations spring out of the transaction, if they elucidate it, if they are voluntary and spontaneous, and if they are made at the time so near it as to reasonably preclude the idea of deliberate design, they are then to be regarded as contemporaneous." *State* v. *Garrand,* 5 Oregon, 216; *State* v. *Arnold,* 47 S. C., 9, 24 S. E. R., 926; *State* v. *Belcher,* 13 S. C., 459. W. L. Stone and J. C. Stone must be regarded in the light of strangers or as agents of the plaintiff. In 21 A. & E. Enc., 108, under the head of "Declarations to or by Strangers," it is said: "The declarations of strangers are sometimes admissible, but they should be shown to be a part of the thing done, contemporaneous with it, or so connected with it as to give it character; they should amount to verbal acts that would be attributable to the party whose acts or conduct they explain." And

under the head of "Acts and Declarations of Agents and Employees," it is also said: "Where an agent is acting within the scope of his agency, his declarations made to the person whose interests are directly involved at the place where transaction or occurrence happened, so near the occurrence or transaction in point of time as to be justly and reasonably regarded as part of it, are ordinarily to be regarded as part of the *res gestae*. But they must be made not only during the continuance of the agency, but in regard to a transaction depending at the very time." In the case of *V. & M. R. Co.* v. *O'Brien,* 119 U. S., 99, the rule is thus stated: "There can be no dispute as to the general rules governing the admissibility of the declarations of an agent to affect the principal. The acts of an agent, within the scope of authority delegated to him, are deemed the acts of the principal. Whatever he does in the lawful exercise of that authority, is imputable to the principal, and may be proven without calling the agent as a witness. So, in consequence of the relation between him and the principal, his statement or declaration is, under the same circumstances, regarded as of the nature of original evidence; 'being,' says Phillips, 'the ultimate fact to be proved, and not an admission of some other fact.' 1 Phil. Ev., 381. 'But it must be remembered,' says Greenleaf, 'that the admission of the agent cannot always be assimilated to the admission of the principal. The party's own admission, whenever made, may be given in evidence against him, but the admission or declaration of his agent binds him only when it is made during the continuance of his agency, in regard to a transaction then depending, *et dum fervet opus.* It is because it is a verbal act, and part of the *res gestae,* that it is admissible at all; and, therefore, it is not necessary to call the agent to prove it; but whenever what he did is admissible in evidence, then it is competent to prove what he said about the act *while he was doing it.'* 1 Greenl. Ev., sec. 113. This Court had occasion, in *Packet Co.* v. *Clough,* 20 Wall, 540, to consider this question. Referring to the rule, as stated by Mr. Justice Story in his Treatise on

Agency, sec. 134, that 'where the acts of the agent will bind the principal, there his representations, declarations and admissions respecting the subject-matter, will also bind him, *if made at the same time and constituting part of the res gestae;'* the Court, speaking by Mr. Justice Story, said: 'a close attention to this rule, which is of unusual acceptance, will solve almost every difficulty. But an act done by an agent cannot be varied, qualified or explained, either by his declarations, which amount to no more than a mere narrative of the past occurrence, or by an isolated conversation held, or an isolated act done, at a later period. The reason is that the agent to do the act is not authorized to narrate what he had done, or how he had done it, and his declaration is no part of the *res gestae.'* " Tested by these principles, the declarations of W. L. Stone and J. C. Stone were not a part of the *res gestae,* and were incompetent as evidence. The testimony which his Honor, the presiding Judge, excluded was, therefore, irrelevant, and was not admissible for the purpose of contradicting the said J. C. Stone. *State* v. *Sullivan,* 43 S. C., 205, 21 S. E. R., 4.

*Ninth and tenth exceptions:* These exceptions are controlled by what was said in considering the eighth exception.

*Eleventh exception:* The witness did not testify as an expert. But even if he had so testified, the case was not one calling for expert testimony, as it only involved the ordinary affairs of life. Under such circumstances, it is only necessary to submit the facts to the jury, who are peculiarly competent to decide such issues. *Easler* v. *Ry. Co.,* 59 S. C., 311, 37 S. E. R., 938.

*Twelfth exception:* We cannot for a moment suppose that the answers to these questions in any respect were prejudicial to the defendant.

*Thirteenth exception:* What has been said applies to this exception.

All the remaining exceptions (except the twentieth, which was taken under a misapprehension of the facts as disclosed by the record) involve the consideration of the entire charge,

and when it is considered in its entirety, it will be seen that it is free from error, and that the defendant has no just ground for complaint.    Under these circumstances, we have reached the conclusion that the best and most feasible way to dispose of the exceptions is to reproduce the charge—any other mode would prolong this opinion into a volume.

The charge (omitting the introductory portion thereof) is as follows:

"So much as to understanding what our respective duties are.

"These are defendant's requests:

" '1. Where one brings an action to recover damages for injuries inflicted upon him by collision with the engine of a railway train at a highway crossing, and alleges that such injury was caused by a failure to ring the bell or blow the whistle continuously for five hundred yards before reaching such crossing, he must prove: First. That the injury occurred at a highway crossing.    Second. That the railway company failed to ring its bell or sound its whistle for five hundred yards continuously before reaching such crossing; and Third. That this failure contributed to the injury complained of.'    Well, that is true.    If an injury occurred in the middle of a field, that is an injury, but he must prove that the injury occurred at a highway crossing.

" '2. The object the law has in requiring a railway company to ring its bell or sound its whistle continuously for five hundred yards before reaching a highway crossing, is to notify travelers along such highway, intending to cross the railway track, of the approach of the train, so as to avoid their coming into collision with such engine or train.'    That is correct.    The object of the statute is to notify people that both have a right to use the road.    The railroad has a right to use its track and the public has a right to use a public highway.    The law enjoins upon the railroad company that for five hundred yards before approaching a public highway they must ring a bell or blow a whistle continuously for five

hundred yards before reaching the crossing, to warn those who intend to cross of the approach of the train. That is the object of the statute.

" '3. If a person traveling along a highway, intending to cross a railway track, sees or hears an approaching train in ample time before it reaches such crossing, and by the exercise of ordinary care, after seeing or hearing such train, could keep from entering on the crossing just in front of such engine and train, then it cannot be said that the failure to ring the bell or sound the whistle contributed to the injury.' That is correct. If a man riding on a public highway sees a train right in front of him, and just goes headlong and dashes in front of the engine, he cannot say failure to ring the bell in that instance contributed to the injury. He saw it approaching, and if he sees it coming and then goes headlong in front of the engine, he cannot charge a failure to ring the bell or blow the whistle. That is correct.

" '4. If the failure to ring the bell or sound the whistle continuously for five hundred yards before reaching a highway crossing does not contribute to an injury, then if the injured party failed to exercise ordinary care and caution, and this failure contributed to any extent as a proximate cause to the injury, such injured person cannot recover damages of the railway company on account thereof.' I think that is correct. As I have just charged you, if he sees it in ample time coming, and goes in front of it, he cannot say in that event a failure to ring the bell contributed to his injury. So I tell you, it depends upon how you find the facts to be.

" '5. If a person on a highway, intending to cross a railway track, sees or hears an approaching train in ample time before it reaches the crossing, he should exercise such care as persons of ordinary prudence usually exercise to keep from going on the track just in front of such train, and if he fails to exercise such care, and with full knowledge of the approaching train and of its attendant dangers, does go upon the track and is struck by an engine, it cannot be said that

the failure to ring the bell or sound the whistle contributed to the injury.' That is correct.

" '6. A person who is traveling along a highway approaching a railroad track, intending to cross it, and who sees and hears an approaching train in ample time to keep from going on the track, ought to exercise such care and caution as persons of ordinary prudence should exercise under the same circumstances in order to prevent coming in collision with such train and being injured.' If he fails to use these senses in gross negligence, then under those circumstances he cannot recover.

" '7. While it is true that the law imposes upon a railroad company the duty of ringing its bell or blowing its whistle for five hundred yards continuously before reaching a highway crossing, it also imposes the corresponding duty of a person on such highway, intending to cross the track, of using his senses to ascertain whether a train is approaching, before going on the track.' That I charge you to be the law. If that man knows he is on the railroad track, the law would not allow him to stop up his ears and deaden his sensibilities. He must use such care and precaution as a man of ordinary prudence, care and foresight would use under the circumstances.

" '8. If a person is traveling along a highway approaching a railroad track, intending to cross it at a point where it is easy to see a train or engine approaching, he should look and listen in order to find out whether there is a train or engine coming, and not heedlessly go on a track just in front of an approaching engine, where by exercising slight care he could avoid doing so.' That is correct, as I have already charged you. The law would not permit him to deaden his senses by stopping up his ears and go heedlessly on the track.

" '9. It is the duty of the person who is on a highway approaching a railroad track, intending to cross it, where the view of the track is plain and open for some distance, to exercise his senses of sight and hearing. He should look and listen for the train, if by doing so he could see or hear

the train in ample time to avoid going on the track just in front of it.' That is correct.

"I have refused the tenth request.

" '11. If a person approaching a railway crossing, intending to cross it, fails to exercise slight care to avoid being struck by an approaching engine, and this failure contributes to his being struck and injured by such engine, then such person cannot recover damages of the railroad company on account of such injuries on account of such failure to ring the bell or sound the whistle, as required by statute.' If a person approaches a railroad crossing, intending to cross, and fails to exercise slight care to avoid being struck by the approaching engine, and this failure contributes to his being struck and injured by such engine, then such person cannot recover damages of the railroad company on account of such injury, on account of failure to ring the bell and blow the whistle, as required by statute.

"The twelfth request is withdrawn.

" '13. A railway company is not bound to slack the speed of its engine or stop its train simply because a traveler is seen approaching its track along a highway; on the contrary, the employees of a railway company have a right to assume that persons who are approaching a track along a highway, whether the view is open or obstructed, will use their senses of sight and hearing to ascertain whether or not a train is approaching, and will heed any warning which may be given.' That is correct.

" '14. The fact, if it be a fact, that the view is obstructed, does not fail to excuse a person from trying to ascertain in a reasonable way whether a train is approaching before he enters on a railroad track; such persons should look and listen before going on the track.' That I charge you to be a good proposition of law.

" '15. A wilful act means an act which shows that a person intended to do what was done; a wanton act means an act done in total disregard to the rights of others.' That is correct.

" '16. If the jury find that plaintiff was injured by ordi-
nary negligence of the defendant, then they cannot give
damages on account of wilful negligence.' That is correct.

" '17. If, on the contrary, they find plaintiff was injured
by a wilful or wanton act of the defendant, then they cannot
give damages on account of ordinary negligence for wilful-
ness or wantonness.'

" '18. If the jury find that the plaintiff was injured by
the negligent act of the defendant, then they can only give
such damages as they think would compensate her for any
such injuries, and not for the purpose of punishing the de-
fendant.' That is correct.

"Now, as you have heard and gathered from hearing the
requests to charge read in this case, the act of negligence
complained of was that defendant failed to blow his whistle
or ring his bell continuously for five hundred yards before
approaching the crossing. That is one act of negligence
complained of, and upon that I will read you the statute law
of this State. Sections 1685 and 1692 of the statute. That
means this: That if you should find from the facts, that in
approaching this public highway the railroad company failed
to ring its bell or blow its whistle continuously for five hun-
dred yards previous to its passing this railroad crossing, and
as a result it had a collision with the defendant here, that, the
law says, is an act of negligence on the part of the railroad
company—failure to ring the bell or blow the whistle—*per
se,* they would be liable for the consequences of such dam-
ages as occurred under such circumstances only to the party
with whom the collision occurred. That would mean guilty
of gross or wilful negligence. Now, what is gross negli-
gence? It means more than ordinary negligence, and it is
very difficult of explanation, because different acts under dif-
ferent circumstances might be negligence, but they might
not be gross negligence, and it depends upon the circum-
stances as to how the party acted at the time under the
circumstances, whether he was guilty of gross negligence or
of ordinary negligence, or whether he was guilty of any

negligence at all. But it would not excuse the railroad company for you to simply find the plaintiff was guilty of ordinary negligence. If you find that they could have seen the train by using ordinary care, and did not use that ordinary care, and that was a negligent act itself, but was not gross negligence, that would not excuse the railroad company; but in order to excuse them, the negligence must have been wilful or gross.

"Now what would be gross negligence? It so happens that in this State a case was tried—I alluded to it this morning—where one of our oldest Judges, in construing this statute, said a person might safely enter upon a railway track and go to sleep, and wait to be aroused by the blowing of the whistle or the ringing of the bell. The Supreme Court said no, that would be gross negligence. Now, the section which I just read to you, then, would excuse the company for an act of that sort. If a party would go and wilfully stand upon the track, even if the company failed to ring its bell, he says I will stand here until he does blow his whistle or ring the bell, that would be wilful, and the railroad company cannot be held liable under those circumstances. I can give you an extreme case, in order that you may determine the question whether the plaintiff was guilty of any negligence at all, or in seeing whether she was guilty of negligence that would excuse the company from liability for failing to blow its whistle or ring its bell continuously for five hundred yards before approaching the crossing. If you find that defendant company did fail to blow the whistle, engineer or fireman failed to blow the whistle or ring the bell continuously for five hundred yards before approaching that crossing, and that failure contributed to the collision that has been described here, then, why you would estimate and say, has the plaintiff sustained any damage, if she has been damaged. How do you estimate damages? The law says, if the injury has been caused by the negligence of defendant company, you can take into consideration not only the loss of time that the party has suffered, or injury to his property, but you can

24—67

take into consideration his feelings, or any pain or suffering that has been a result of the injury received under those circumstances, any pain, anguish and excitement occasioned by the accident that has occurred under these circumstances. But if you should find that it was an act of recklessness, result of recklessnes or wantonness, you are at liberty not to confine your verdict to actual damages a person has sustained, but you would have a right to inflict what is known as smart money, or punitive or exemplary damages that arise in actions of this sort. If you should find that the engine was run in such reckless manner as to totally disregard the right of the traveling public, and as a result of that kind of negligence this accident occurred, you would have a right to make an example of the company, to punish them, in order that they might not run their engine in such a manner as to be so regardless of the rights of the traveling public.

"Now, each has a right, as I have already told you, to the highway. Each has a right to pass over it. The railroad gets its charter from the State to run its line of cars on that track. It gives the railroad the right to run on it, but does not exclude the public the right to use the public highway. So each have a corresponding right and duty. It is the duty of a traveler to use such care and ordinary prudence in approaching a railroad track as a man of ordinary prudence and caution, under the circumstances, would use. On the contrary, it is the duty of the railroad, when it gets in hearing distance from the crossing, to sound the alarm and sound it continuously until it passes that place. You will ask yourselves the question, Was the accident resulting to plaintiff through any negligence on the part of the railroad company? And, if so, was that negligence of such a character as to amount to wilful carelessness, a wanton and total disregard of the rights of the traveling public?

"Now, I can give you an extreme case of what would be a case of wanton negligence: If here in the city of Spartanburg, on a crowded occasion, and the track and platform of the railroad was crowded with hundreds of people, and an

engineer or an engine, coming in sight of that crowd, does not attempt to stop, but opens the throttle and goes through that crowd without heeding the presence of those people, without undertaking to care for their safety runs through the crowd in such a manner as I have just described, and as a result some one is injured, that would be a case in which a jury could give punitive, smart money, or exemplary damages, to teach them a lesson, that other people have rights as well as the railroad, and if you don't respect them, we will punish you by making you pay for the consequences. You are here as official arbitrators between the railroad and the plaintiff. Give us your best judgment, and let the result be summed up in your verdict. Take the record and find your verdict."

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE WOODS *dissenting.* The first, second and third exceptions, I think, should be sustained. The material allegations of the complaint and the exceptions are copied in the opinion of Associate Justice Gary, and it is, therefore, unnecessary to set them out in full again. The plaintiff and her infant were crossing the track of the defendant in a wagon upon a public highway. The locomotive of defendant struck the wagon, and the plaintiff and her infant were thrown out and injured. In the second paragraph of the complaint the allegation is, that without notice to the plaintiff, the defendant caused its locomotive to approach the crossing at a reckless and unlawful rate of speed, "and before plaintiff could escape with her infant baby, said locomotive struck the wagon in which plaintiff was seated, wrecking the same and throwing the plaintiff with her infant in her arms to the ground in so violent a manner as to break the thigh bone *of her said infant* and horribly bruising the plaintiff, wounding her physically and mentally, to her great damage in the sum of five thousand dollars." The third paragraph alleges the failure to give statutory signals, and

charges the defendant "wilfuly and wantonly and negli-
gently, and in utter disregard of the rights of plaintiff,
caused its locomotive to run into the wagon in which plaintiff
*and her infant* were traveling, upon the public highway
aforesaid, thereby inflicting upon her *and her said infant*
serious bodily injuries and mental suffering, to her great
damage five thousand dollars." The fourth paragraph al-
leges the defendant "carelessly, negligently, wantonly and
wilfully, and in utter disregard of *the rights of plaintiff and
her infant in arms,* failed to stop its said locomotive, after
discovering the wagon in which plaintiff was traveling upon
the public highway, in time to prevent the *injury to plaintiff
and her infant,* to her great damage in the sum of five thou-
sand dollars." I have italicized the expressions in the quota-
tions from the complaint which are material to this discus-
sion.

There are some expressions in the complaint which may
seem to indicate the plaintiff sought to recover damages for
the physical injuries inflicted on her child as well as those
inflicted on herself. But the action was treated throughout
as not intended to cover damages to plaintiff for loss of ser-
vice or society of the child. Indeed, there are no allegations
in the complaint as to loss of service or society, and the plain-
tiff could not recover for physical injuries to the child on any
other ground. In addition to this, it can hardly be supposed
the mother meant to set up a claim of this kind without any
allegation of the death of the father, who alone would be pri-
marily entitled to make such claim. The case, therefore, has
no analogy to an action for damages to the parent from
seduction of a child. In such cases damages are allowed for
the parent's wounded feelings, all courts regarding such
actions as *sui generis* in this regard, and outside of the gene-
ral principle applied to actions of parents for injuries to their
children. It is obvious from the conduct of the case as
disclosed by the record that the statements as to the injuries
to the infant were placed in the complaint, not for the pur-
pose of setting up a distinct cause of action, but to show

circumstances of aggravation attending the injury to the mother, by reason of which her mental anguish and distress were greatly augmented.

It appears from the record, "when the case was called for trial, the defendant duly moved to strike from the complaint, as being irrelevant and redundant, and as not constituting the cause of action against the defendant, the following words from paragraph two: 'break the thigh bone of her said infant;' and from paragraph three the words in line two from the bottom of said paragraph, 'her said infant;' and from paragraph four the words, 'and her infant in arms;' and in line from the bottom of paragraph four the words 'and her infant.'" The defendant's motion to strike out the foregoing words from the complaint was overruled, the Court holding that "they were responsive to the issue of mental anguish and suffering; to this ruling the defendant duly excepted." The plaintiff, without making any objection that notice of the motion had not been given, opposed it on the merits, and thus waived the lack of notice. It will be observed that the motion was refused on the sole ground that the plaintiff might allege the injuries to her infant as a basis of damages to her growing out of her mental suffering caused thereby. The evidence referred to in the second exception, relating to the mental suffering of the plaintiff on account of the injury to her infant, was admitted by the Court on the same ground. The question involved was not the right to recover for injuries impairing the plaintiff's ability to meet her legal obligations to support the child. The cases of *Youngblood* v. *R. R. Co.*, 60 S. C., 10, 38 S. E., 232; *Johns* v. *Ry. Co.*, 39 S. C., 162, 17 S. E., 698, and *Mathis* v. *Ry. Co.*, 53 S. C., 246, 31 S. E., 240, relied on by respondent, therefore, do not apply.

I quote the third exception, because it states distinctly the important question under consideration: "Because his Honor, in refusing to strike the words referred to in first exception from the complaint, and in permitting the plaintiff to testify as to injuries inflicted upon her baby and the effect

this had upon her mind, erred, in that he allowed the jury to consider and to assess damages for the mental suffering of the plaintiff on account of injuries caused to another." The question here squarely presented, whether one upon whom physical injury is inflicted by a tort may recover for the mental anguish resulting from the physical injury to another member of his family, has never been directly decided in this State.    True, it has been held that in actions for wilful tort all the facts and circumstances may be considered by the jury in awarding exemplary damages; but the cases so holding do not decide the question here involved.    In *Pickens* v. *R. R. Co.,* 54 S. C., 498, 32 S. E., 567, the plaintiff was allowed to testify as to sickness and pains produced by exposure to a storm which she encountered in leaving a railway station, in consequence of the defendant's failure to provide transportation from the station to her destination as it contracted to do. *Marsh* v. *Tel. Co.,* 65 S. C., 430, involved the admissibility of similar testimony, where the exposure was due to the failure of defendant to deliver a telegram.    In *Young* v. *Tel. Co.,* 65 S. C., 93, the plaintiff alleged physical pain and discomfort at the funeral of his child, for which no arrangements had been made in consequence of defendant's failure to deliver a telegram.    There was no claim for mental anguish.    The question presented in these cases was, whether the plaintiff's own physical suffering and pain and consequent mental distress were not too remotely connected with the wrong of the defendant to be submitted to the jury.    It is obvious the proposition contended for in the case under discussion is, that the jury may take into consideration not only the circumstances surrounding the plaintiff and affecting her directly as in the cases just cited, but also the circumstances surrounding her child and its suffering, and allow her damages for her mental anguish produced thereby.

Delivering the opinion of the Court in *Lewis* v. *Telegraph Company,* 57 S. C., 330, 35 S. E., 556, Chief Justice Pope says: "There are a few of the Supreme Courts of the States of this Union which do uphold the doctrine that damages

may be awarded for mental suffering disconnected with physical injury—such as Texas, Tennessee, North Carolina, Alabama and a few others.    Our own State may be classed among those who adhere to the old common law rule." This general rule is not affected by the special statute on the subject, relating to telegraph companies, enacted since the case of *Lewis* v. *Telegraph Company, supra,* was decided. The doctrine adopted in this State, indicated by the language just quoted, precludes the idea that one himself without physical injury may connect his mental anguish to the physical injury of another and recover for it.    If the plaintiff in this case had herself been uninjured by the fall, it would hardly be contended she could recover for the mental anguish of seeing her child injured.    The fact that she herself was injured does not bring her mental suffering into any closer legal connection with the child's physical injury.    If the latitude here contended for, is allowed, it will not only be a departure from precedents established in this State and elsewhere, but juries will have to go far afield in estimating, or rather conjecturing, the proper damages.    There is no good ground for allowing a recovery for such suffering to a mother for her distress at the sufferings of her infant and denying it to a devoted wife on account of her husband, or to all members of a family for distress at the physical agony of one another.    Indeed, if the doctrine is once admitted, there seems to be no reason why its application can be confined to members of one household or family.    There are kinds of hardship and suffering growing out of breach of contract as well as tort which the law does not deny, and yet makes no attempt to compensate, because such attempt would, as a practical result, produce greater injustice and confusion. To attempt to give damages to one person for his mental suffering on account of injury to another, would be a striking example of an effort to carry the law beyond the province where the courts may expect to administer practical justice with reasonable certainty.

There are few reported cases in this country where the

attempt has been made to recover for mental anguish caused by physical injuries inflicted on another. The view which I have endeavored to present is believed to be supported by the great weight of authority. *Black* v. *R. R. Co.,* 10 La. Ann., 33 (63 Am. Dec., 587) ; *Wyman* v. *Leavitt,* 71 Me., 227 (36 Am. Rep., 303) ; *Fillebrown* v. *Hoar,* 124 Mass., 580; *Keys* v. *R. R. Co.* (Minn.), 30 N. W., 888; *Stone* v. *Evans* (Minn.), 20 N. W., 149; *Cowden* v. *Wright,* 24 Wendell, field on Negligence, sec. 761. The Court of Civil Appeals of Texas has gone very far in allowing damages for mental suffering; but that Court, in the case of *Pullman Car Co.* v. *Trimble,* 28 S. W., 96, has repudiated the doctrine here contended for, in this vigorous language: "It has, however, been repeatedly decided, that, in estimating the amount of damages one is to receive for a breach of a contract of carriage, or for a tort grounded upon such breach, of the kind here in question, his own mental anguish is to be taken into the account; and, in arriving at the degree of such suffering, all the environments of the injured party are to be considered. But even then we think the complaining party must be restricted to the mental anguish which emanates from the wrong done himself, and not extended to that which he may experience in contemplating the sufferings of others who may be injured at the same time, however near to him they may be. Were the rule otherwise, each passenger in a railroad wreck might claim the right to recover, not only for the distress of mind which arose from his own injuries, but also for that which he sustained from contemplating the mangled condition of his fellow-passengers; and even one who sustained no physical injury himself might be allowed to recover a large verdict for the anguish he endured while witnessing the bleeding forms of his companions and relatives, and listening to their heart-rending cries."

For the reasons above stated, the defendant's motion to strike out the statements as to the injury of the child of the plaintiff, should have been granted, and the objection to the

testimony introduced as to her mental suffering caused by injuries to the child, should have been sustained. If there was error in this regard, it is manifest from an examination of the record it was quite prejudicial to defendant. I think the first, second and third exceptions are well founded, and that the judgment of the Circuit Court should, therefore, be reversed.

Petition for rehearing, filed herein August 5, 1903, was dismissed November 2, 1903, by the following *per curiam* order:

After careful examination of the petition herein for a rehearing, this Court is satisfied that no material question of law or of fact has either been overlooked or disregarded.

It is, therefore, ordered, that the petition be dismissed, and that the order heretofore granted staying the remittitur be revoked.